UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY TAYLOR, JR. | CIVIL ACTION NO. |
| Plaintiff, | SECTION: |
| v. | JUDGE: |
| AMERICAN SUGAR REFINING, INC. DBA DOMINO SUGAR CHALMETTE | MAGISTRATE JUDGE: |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

### NATURE OF THE ACTION

This is an action under Title VII, as amended, of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866, to correct unlawful employment practices on the basis of race and to provide appropriate relief to Johnny Taylor ("Plaintiff" or "Taylor"), who was adversely affected by such practices.

As alleged with greater particularity in the Statement of Claims below, Defendant American Sugar Refining, Inc., dba Domino Sugar ("Defendant" or "ASR") discriminated against Taylor when it terminated his employment because of his race.

### JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. This action is instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e2(a) and the Civil Rights Act of 1866, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

## PARTIES

3.

Plaintiff is an African American of majority age residing in Arabi, Louisiana.

4.

At all relevant times, Defendant has continuously been a corporation domiciled in the State of Delaware with its principal business office in West Palm Beach, Florida. ASR has its principal business establishment in Louisiana in the city of Arabi and is licensed to do business within the State of Louisiana. ASR has continuously had at least 15 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce.

## STATEMENT OF CLAIMS

6.

On September 13, 2018, Taylor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant illegally terminated his employment because of race discrimination. This charge was filed within 300 days of the ASR's discriminatory actions that occurred between May 18, 2018 and June 5, 2018.

7.

After investigating Taylor's claim, on September 23, 2020, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that ASR violated Title VII when it terminated Taylor's employment. The EEOC then invited ASR to join with the EEOC in informal methods of conciliation to endeavor to eliminate the alleged unlawful practices and provide appropriate relief to Taylor.

8.

The EEOC engaged in communications with ASR to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

9.

In his EEOC charge Taylor described his illegal termination and named Michael LeGuard as the similarly situated co-employee of a different race who received more favorable treatment. ASR was put on notice of Taylor's claims and responded to them by submitting a position paper dated November 16, 2018.

10.

On March 31, 2021, the EEOC issued a Notice of Conciliation Failure and a Notice of Right to Sue.

11.

This lawsuit was filed within 90 days of Taylor's receipt of the Notice of Right to Sue.

12.

Taylor, a Black male, began his employment with ASR on September 3, 2013. Most recently, he worked in the job classification of Sugar Weigher.

13.

On the evening of May 18, 2018, Taylor clocked out and left work at the end of his 8-hour shift.

14.

Taylor was not informed that his relief for the night had called off.

15.

Taylor was working with two junior employees who also were not informed by the Supervisor that the relief had called off and that they needed to stay to cover the next shift.

16.

On May 21, 2018, Gioavanni Martinez, Supervisor, who is not Black, and Michael Cooperider, Department Manager, who is Caucasian, met with Taylor and claimed that Taylor violated Rule 21 of the ASR Chalmette Refinery Plant Rules and Regulations, when he left work on May 18, 2018.

17.

Rule 21 states:

"There are various degrees of misconduct, and the discipline administered will depend upon the facts and circumstances as determined in each case. In very serious situations, the discipline will be dismissal, while another instances, the pattern may be written warning, short suspension, longer suspension at dismissal. The entire record of an employee will be considered before the specific discipline is determined for any of the following violations:

.....

21. Leaving assigned work, workstation or refinery during employees working hours without prior permission of supervisor."

18.

On June 4, 2018, Taylor was informed by ASR that he was being discharged for job abandonment.

19.

According to the position paper submitted to the EEOC on November 16, 2018, ASR terminated Taylor for one reason and one reason only, to wit, walking off the job without permission and without his relief present.

20.

ASR's stated reasons for termination are false and a pretext for race discrimination. ASR's stated reasons are not the real reason for the termination, but are a cover up for ASR's race discrimination.

21.

Taylor did not leave the refinery during his work hours, but only after his 8-hour shift was completed at 11:00 pm.

22.

The Specialty System was not operational prior to the end of Taylor's shift. Therefore, the Specialty System was not forced to discontinue operation because of Taylor leaving the refinery at the end of his shift. Taylor did not cause a production loss of 25,000 lbs. of sugar equivalent to $8,000.00. There was no production loss as ASR claimed in the termination letter of June 5, 2018.

23.

Taylor was disparately treated because of his race. Taylor was treated less favorably because of his race than his Caucasian co-worker Michael LaGuard, even though they were similarly situated and ASR disciplined them under nearly identical circumstances. They both had the same job title, were both supervised by the same company employees and were both disciplined for violating the same company policy. LaGuard was not discharged the first time he violated Rule 21, but Taylor was discharged the first time that he was considered by ASR to have violated Rule 21.

24.

LaGuard was not discharged when he walked off the job during his shift on August 3, 2018, without permission of his Supervisor while the Specialty System was operational. Taylor, on the other hand, was discharged for leaving the refinery after his shift ended when the Specialty System was not operational. It is a much more serious situation to leave the refinery when the Specialty System is operational. It is also much more serious to leave the refinery during an employee's shift, rather than after the employee's shift had ended. Although LeGuard committed the more serious offense, he was not discharged, as was Taylor.

25.

LaGuard walked off the job without permission for a second time on August 28, 2018. Again, he was not discharged at that time. Only after Taylor filed his race discrimination charge with the EEOC on September 13, 2018, and seven weeks after the offense was committed, was LeGuard discharged. Taylor was discharged only two and a half weeks after his alleged offense. Again, this is clear disparate treatment based on race.

26.

Although Taylor had a June 12, 2016 issued a Report of Conference #3 ("ROC 3") in his

disciplinary file at the time of his May 18, 2018, incident, the ROC 3 had been downgraded by ASR almost two years prior.

27.

ASR unlawfully terminated Taylor because of his race.

28.

The practices complained of herein have deprived Taylor of equal employment opportunities by terminating his employment on the basis of his race which violates Title VII and Section 1981.

29.

The unlawful employment practices complained of herein were intentional.

30.

ASR has a pattern or practice of discriminating against Blacks in disciplining its employees.

31.

The unlawful employment practices complained of herein were committed with malice or with reckless indifference to Taylor's federally protected rights.

32.

The unlawful employment practices complained of herein have caused Taylor to suffer economic injuries, including but not limited to lost wages and benefits, as well as non-pecuniary injuries, such as emotional distress damages and damage to reputation.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors,

assigns, and all persons in active concert or participation with it, from illegally discharging an employee because of his or her race.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees of all races and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Taylor whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to reinstate Taylor's employment or to make him whole by providing him with front pay, in amounts to be determined at trial, to eradicate the effects of Defendant's unlawful employment practices.

E. Order Defendant to make Taylor whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Defendant to make Taylor whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional and mental anguish, pain and suffering, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

G. Order Defendant to pay Taylor punitive damages for its malicious and reckless conduct, as described hereinabove, in amounts to be determined at trial

H. Award attorney fees and costs of this action.

I. Grant such further legal or equitable relief as the Court deems necessary and

proper.

## JURY TRIAL DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, the Plaintiff hereby requests a jury on all issues raised in the instant Complaint which may be tried by jury.

*[signature: Victor R. Farrugia]*

Victor R. Farrugia, Bar No. 19324
FARRUGIA LAW FIRM, LLC
1340 Poydras Street, Suite 2100
New Orleans, LA 70112
Telephone: (504) 525-0250
Facsimile (504) 293-0651
vfarrugia@farrugialawfirm.com

Please serve:

American Sugar Refining, Inc.
Through its Agent for Service of Process:
Corporate Creations Network, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471